COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Coleman and Bray
Argued at Richmond, Virginia


VANCE CARL ROBINSON
                                         OPINION BY
v.    Record No. 2183-98-2    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                       FEBRUARY 8, 2000
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Ernest P. Gates, Judge Designate

             Esther J. Windmueller for appellant.

             Marla Graff Decker, Assistant Attorney
             General (Mark L. Earley, Attorney General, on
             brief), for appellee.


     Vance Carl Robinson (appellant) entered a conditional

guilty plea to possession of cocaine, in violation of Code

§ 18.2-250.  He contends the trial court erred by denying his

motion to suppress evidence obtained during a warrantless search

of his residence when the police, escorting a known trespasser,

entered his apartment to retrieve the trespasser's jacket.  For

the following reasons, we reverse and remand.

                      I.  FACTUAL BACKGROUND

     The evidence established that Officer Ronald May (May)

responded to a report of a trespass in progress at the Shockoe

Hill Apartments in the City of Richmond.  May knew that the

trespasser, identified as April Brown (Brown), had previously

been barred from the apartment complex.  As he arrived at the

scene, May saw Brown "[c]oming from [appellant's] apartment" wearing a shirt and a pair of shorts that were unbuttoned. Brown saw May and ran. After she was apprehended in the front of the building, Brown said "she was visiting Vance Robinson."

In the parking lot of the apartment complex, May placed Brown under arrest. At that time, Brown stated she wanted to "get her jacket" from Robinson's apartment. The officer permitted Brown to retrieve her jacket and with two other officers followed her to appellant's apartment. Officer May testified as follows:

> Q. And did there come a time where you entered into Mr. Robinson's apartment?
>
> A. Yes, I did.
>
> Q. And who opened the door?
>
> A. Ms. Brown.
>
> Q. And where were you?
>
> A. Right behind her?
>
> Q. And did you step into the apartment?
>
> A. Yes, I did.
>
> Q. Did you knock on the door?
>
> A. I didn't knock. She just went right in.
>
> *        *        *        *        *        *        *
>
> Q. . . . Did you ask anyone's permission to enter that apartment?
>
> A. No, ma'am.
>
> Q. You knew it wasn't her apartment, right?

-

A.  Yes, I did know that.

Q.  And you knew she wasn't even supposed to be on that property in any way?

A.  Correct.

Q.  And you walked your whole full self into the apartment; is that correct?

A.  Yes, I did.

Prior to entering the apartment, the police knew that the apartment did not belong to Brown and that she was banned from the apartment complex by the management.

When the police first entered, they saw appellant "standing in the kitchen area." May also saw a "crack pipe" in plain view on a nearby table. The table was visible immediately upon entering the front door of the apartment. As a result of seeing the crack pipe, May asked appellant for permission to search the apartment. Appellant cooperated with the police and signed a consent form. As a result of the search, the officers seized a plastic bag containing .038 grams of cocaine.

Prior to trial, appellant moved to suppress the evidence, arguing that the warrantless entry into his apartment violated the Fourth Amendment. In denying the motion, the trial court stated:

> I think this officer had a good faith
> exception that he reasonably believed that
> he had a right to go in and follow the lady
> that took him in to get her coat. I think
> he did what anybody would have done under
> the circumstances and that he had apparent

-

> authority to go in.  So he didn't violate
> [appellant's] rights.  I deny your motion to
> suppress.

Pursuant to Code § 19.2-254, appellant entered a conditional plea of guilty and appealed the denial of his suppression motion.

## II.

In considering the trial court's denial of a motion to suppress, the burden is on appellant to show that the court's ruling constituted reversible error.  See McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc).  In such cases, we view the evidence in the light most favorable to the Commonwealth, the party prevailing below.  See Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994). Ultimate questions of reasonable suspicion and probable cause involve questions of both law and fact and are reviewed de novo on appeal.  See McGee, 25 Va. App. at 197, 487 S.E.2d at 261. We are bound, however, by the trial court's findings of historical fact "unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  Id. at 198, 487 S.E.2d at 261.

### A.  Warrantless Entry

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amd.

-

IV.  By its explicit terms, the Fourth Amendment "protects the individual's privacy in a variety of settings.  In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home . . . ."  Payton v. New York, 445 U.S. 573, 589 (1980).  "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," United States v. United States District Court for E.D. Michigan, 407 U.S. 297, 313 (1972), and "[t]he Fourth Amendment embodies [the] centuries-old principle of respect for the privacy of the home[.]"  Wilson v. Layne, 119 S. Ct. 1692, 1697 (1999).  Thus, under well-established Fourth Amendment jurisprudence, "searches . . . inside a home without a warrant are presumptively unreasonable."  Payton, 445 U.S. at 586 (citations omitted).

"Although the Fourth Amendment permits law enforcement officers to make warrantless arrests in public places upon probable cause, warrantless entries into a suspect's home in order to arrest a suspect violate the Fourth Amendment unless justified by exigent circumstances or consent."  Jefferson v. Commonwealth, 27 Va. App. 1, 14, 497 S.E.2d 474, 480 (1998) (citations omitted).  Because warrantless entries are presumed invalid, the Commonwealth has a heavy burden to justify the warrantless entry.  See Jones v. Commonwealth, 29 Va. App. 363, 369, 512 S.E.2d 165, 167 (1999).  "Unless an exception is shown by the evidence, . . . the threshold of one's home may not be

-

crossed without a warrant."  Id. at 368, 512 S.E.2d at 167

(citing Payton, 445 U.S. at 590).  See Flippo v. West Virginia,

120 S. Ct. 7, 8 (1999) (per curiam) ("A warrantless search by

the police is invalid unless it falls within one of the narrow

and well-delineated exceptions to the warrant requirement

. . . .").

## B.  Apparent Authority to Consent

The Commonwealth concedes that when May made his

warrantless entry into appellant's apartment, he had no probable

cause for the entry and did not confront exigent circumstances.

The Commonwealth also agrees that this case does not involve the

"hot pursuit" of a fleeing felon.  Rather, the Commonwealth

first contends that the warrantless entry into appellant's

apartment was valid because the officers' actions were based

upon the reasonable but mistaken belief that Brown had "apparent

authority" to provide consent.  Thus, the narrow issue presented

is whether it was reasonable for the police to have believed

that Brown, a known trespasser already in police custody, had

apparent authority to enter appellant's apartment and take the

police with her.

We have held that the reasonableness requirement, which

prohibits the warrantless entry of a person's residence, "does

not apply . . . to situations in which voluntary consent has

been obtained, either from the individual whose property is

searched, or from a third party who possesses common authority

-

over the premises." Jones v. Commonwealth, 16 Va. App. 725, 727, 432 S.E.2d 517, 519 (1993) (citing Illinois v. Rodriquez, 497 U.S. 177, 181 (1990)). Even if the third party does not have authority to consent to the warrantless entry, "apparent authority may be sufficient if the facts surrounding the situation would have led a reasonable officer to conclude that the person providing consent had the requisite authority." Id. at 727-28, 432 S.E.2d at 519 (citing Rodriguez, 497 U.S. at 186-88; Caldwell v. Commonwealth, 15 Va. App. 540, 542, 425 S.E.2d 534, 535-36 (1993)).

In Rodriguez, 497 U.S. 177, the United States Supreme Court considered "[w]hether a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of entry, reasonably believe to possess common authority over the premises, but who in fact does not do so." Id. at 179. The Court noted that common authority rests "'on mutual use of the property by persons generally having joint access or control for most purposes . . . .'" Id. at 181 (quoting United States v. Matlock, 415 U.S. 164, 171 n.7 (1974)). "The burden of establishing that common authority rests upon the State." Id.

The Court in Rodriguez concluded that a warrantless entry may nonetheless be valid under the Fourth Amendment where the officer proceeds based upon a reasonable but mistaken belief

-

that a third party has apparent authority to consent.  See id.

at 188-89.[1]  The Court wrote:

> As with other factual determinations bearing
> upon search and seizure, determinations of
> consent to enter must be judged against an
> objective standard: would the facts
> available to the officer at the moment . . .
> warrant a man of reasonable caution in the
> belief that the consenting party had
> authority over the premises?  If not, then
> warrantless entry without further inquiry is
> unlawful unless authority actually exists.
> But if so, the search is valid.

Id. at 188-89 (internal quotations and citations omitted).

### III.

Applying the foregoing principles to the instant case, we

hold that May entered appellant's apartment in violation of

appellant's Fourth Amendment rights and that the trial court

erred in refusing to suppress the evidence found as a result of

the warrantless entry and subsequent search.  Brown, a known

trespasser, lacked actual authority to consent to the

warrantless entry and the officer's belief that she had apparent

authority to consent was objectively unreasonable.  A person of

"reasonable caution" could not logically conclude that an

---

[1] The Fourth Circuit has held that the good faith exception enunciated in Rodriguez does not "extend[ ] even beyond the generally recognized exceptions to the warrant requirement:  i.e., beyond consent, or one of the various forms of exigency that have been recognized depending upon the purpose of the search."  United States v. Moss, 963 F.2d 673, 677 (4th Cir. 1992).  Thus, "the mistaken determinations of police officers that may be excused as good faith, reasonable ones, must yet be related to elements of one of these exceptions."  Id. (emphasis added).

-

individual arrested for trespass of a building or residence could maintain, at the same time, authority over the premises and, thus, authority to consent to an entry of those premises. As the Supreme Court cautioned in Rodriguez, "what we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises." Id. at 188. "Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." Id.

Nevertheless, the Commonwealth contends that the officer's actions were reasonable under the circumstances because "there is no evidence that [appellant] questioned Brown's entry" and "no one protested when the police went inside the apartment with Brown." However, where the validity of a search rests on consent, the Commonwealth has the burden of proving that the necessary consent was obtained. See Johnson v. Commonwealth, 26 Va. App. 674, 687, 496 S.E.2d 143, 149-50 (1998) (citing Florida v. Royer, 460 U.S. 491, 497 (1983) (plurality)). The Commonwealth's "burden . . . is not satisfied by showing a mere submission to a claim of lawful authority." Id. (citing Royer, 460 U.S. at 497); see also Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968).

Here, May was responding to a report of a trespass in progress at appellant's apartment complex when he saw Brown

-

leaving appellant's apartment.  He knew the apartment did not belong to Brown and that she was banned from the apartment building by the management.  Brown was already under arrest at the time the officers allowed her to enter the apartment and followed her inside.  The officers confronted no emergency that required Brown to re-enter without permission of the owner, a place Brown was legally barred from entering.  The officers' reliance on Brown's apparent authority to enter was not objectively reasonable, and appellant's submission to the officer's claim of lawful authority did not satisfy the Commonwealth's burden.

The trial court erred in denying the motion to suppress the evidence.  Accordingly, we reverse and remand for further proceedings if the Commonwealth be so advised.[2]

<u>Reversed and remanded.</u>

---

[2] The Commonwealth also contends the events that immediately followed the officers' entry into appellant's apartment "purged any taint" such that the evidence was nevertheless admissible. This argument is without merit.  The circumstances surrounding the warrantless entry and the subsequent request for consent to search demonstrate that the evidence obtained was the product of the initial illegality, rather than "by means sufficiently distinguishable to be purged of the primary taint."  <u>Wood v. Commonwealth</u>, 27 Va. App. 21, 31, 497 S.E.2d 484, 488 (1998) (citations omitted).  "The officers did not seek [appellant's] consent until after they had made their illegal foray into the [apartment] and found incriminating evidence."  <u>Id.</u>  Thus, appellant's consent to search was not an independent source of the evidence, but rather was an exploitation of the initial warrantless entry.